UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Karen S. Rose, | ) | Case No. 18 B 21202 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| Steven Pavletich, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 19 A 107 |
| | ) | |
| Karen S. Rose, | ) | |
| | ) | |
| Defendant. | ) | Judge Jacqueline P. Cox |

**Memorandum Opinion**

**I. General Background**

The Plaintiff, Steven Pavletich ("Steven"), and the Defendant, Karen S. Rose ("Karen"

and the "Debtor"), are long-time residents of Elk Grove Village, Illinois.  The Village maintains

a social media site on Facebook that informs residents of various issues and events.  It allows

residents to post commentary on it and to engage in discussions.[1]

Steven alleges that Karen posted claims that Steven violated his marital vows by cheating

on his wife.  He also alleges that Karen posted this claim on her personal Facebook page.  He

sued her in the Circuit Court of Cook County, Illinois for defamation in a case captioned *Steven*

---

[1]The discussion herein of the legal and factual issues in the state court case are not
intended to serve as a determination of liability because only the Debtor's defense to the
defamation claim is in issue.  To assess that defense, however, this court needs to understand
what happened below.

*Pavletich v. Karen Rose*, Case No. 2015 L 63080.  He secured a $250,000 judgment against her.

Karen was served; she filed an Appearance and Answer through an attorney on March 16,

2016.  She answered Steven's interrogatories on September 21, 2016:

> #6  Do you have any information the Plaintiff ever cheated on his wife? If yes,
> state the name and address of the person or persons who provided the information,
> the name and address or addresses of Plaintiff's sexual partner or partners and the
> date, time and place of each such occurrence.
>
> ANSWER:  Yes. Information provided by David Rose (1132 Glendale Dr.
> Bedford, TX 76022) and Craig Taucher (700 Wellington Ave., #118, Elk Grove
> Village, IL 60007).  No other information is known.
>
> #8  Have you ever witnessed Plaintiff cheat on his wife?  If so, provide the name
> and address of the person or persons who were Plaintiff's sexual partner or
> partners, and the time, date and place of each such event.
>
> ANSWER: No.

Defendant's Answers to Plaintiff's Interrogatories, Exhibit B to Plaintiff's Motion for Summary
Judgment, Docket 10, p. 2.

Karen actively participated in the defamation lawsuit throughout several hearings.

However, she failed to appear at her deposition on November 4, 2016.  Her attorney filed a

motion to withdraw which was granted.  She was ordered to appear for the deposition on or

before March 6, 2017.  The deposition was scheduled for January 26, 2017; she failed to attend

the deposition and did not inform the Plaintiff's counsel in advance that she would not appear.

Steven filed a second Motion for Discovery Sanctions due to Karen's failure to comply

with his discovery requests and to obey the judge's orders.  *See Motion for Summary Judgment*,

Docket 10, Exhibit C.  Karen was granted two weeks to retain an attorney; she appeared without

one.  Not being satisfied with the explanations of her failure to cooperate with discovery, on

March 21, 2017, the judge entered an order of default for her failure to comply.  A new law firm

appeared on Karen's behalf on April 20, 2017 and filed a motion to vacate the sanctions order

and order of default. A second motion to vacate was filed on May 30, 2017. Steven was allowed

to file a response. On June 9, 2017, the judge found that Karen had failed to overcome her

burden of establishing that her failure to comply with previous orders was justified; she failed to

exhibit a willingness to comply with discovery in the future. The second motion to vacate was

denied. The court continued the matter to August 9, 2017 for an evidentiary hearing on damages.

An evidentiary hearing was held; the court heard testimony from Steven and his wife, Karen

Pavletich, Mrs. Patricia Barr and Mrs. Lynn Oberg. The witnesses were examined under oath by

Karen's attorney. Karen was given an opportunity to testify; she did not testify. The judge took

the matter under advisement and set it for entry of judgment on September 15, 2017. Karen

appeared on that date with her attorney. The judge entered judgment in favor of Steven and

against Karen in the amount of $100,000 - general damages - and $150,000 - punitive damages.

The judge gave an oral explanation of his ruling and advised Karen of her right to appeal. She

did not appeal.

Steven initiated post-judgement collection proceedings on February 9, 2018. Karen filed

for relief under chapter 7 of the Bankruptcy Code ("Code") on July 29, 2018.

Neither Karen nor her attorney appeared at the August 24, 2018 creditors' meeting. At

the continued creditors' meeting date of September 14, 2018, Karen failed to produce sufficient

identification; the meeting was continued to October 26, 2018. Karen's attorney told the trustee

that Karen needed to amend her schedules to disclose a previously undisclosed asset, a $500,000

trust of which she was the sole beneficiary. Karen did not attend the October 26, 2018 creditors'

meeting; it was continued to November 30, 2018. A December 14, 2018 creditors' meeting was

-3-

continued to February 1. This case was not called by the trustee on that date.

This adversary proceeding was commenced on February 21, 2019. It seeks to have the

debt owed Steven declared to be nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

In her Answer, filed on March 19, 2019, Docket 8, Karen admits posting and publishing

the statements in issue on the Elk Grove Village Facebook page and correctly asserted that "true

statements cannot support a claim of defamation." Answer, Docket 8, ¶ 12, p. 3. The witnesses

she named therein are Craig Taucher ("Taucher") and her brother, David Rose. This court heard

Taucher's testimony that he heard Steven brag about having a mistress; David Rose did not

testify at the adversary trial. Karen's sister-in-law, Carolyn Rose (David's wife) who was not

listed as a witness in the interrogatory response, testified at the adversary trial.

On April 16, 2019, Karen filed an Amended Schedule A/B, disclosing her beneficial

interest in two trusts, valued at $400,000.

## II. Jurisdiction

Federal district courts have "original and exclusive jurisdiction" of all cases under the

Bankruptcy Code. 28 U.S.C. § 1334(a). District courts may refer their bankruptcy cases to the

bankruptcy judges for their districts. 28 U.S.C. § 157(a). The District Court for the Northern

District of Illinois has referred its bankruptcy cases to the Bankruptcy Court for the Northern

District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

This matter involves a core proceeding for which this court has authority to enter a final

judgment 28 U.S.C. § 157(b)(2)(I) - a determination as to the dischargeability of a particular

debt.

-4-

### III. Legal Issues

The complaint in this adversary proceeding is based on section 523(a)(6) of the Code,

which provides an exception to discharge for "wilful and malicious injury by the debtor to

another entity or to the property of another entity." Because the goal of bankruptcy is to give

debtors a fresh start, debts are presumed dischargeable and will be discharged unless proven non-

dischargeable. "Excluded from discharge . . . are a number of categories of debts for which

Congress has found that the interests of creditors outweigh the debtor's interest in a fresh start."

*Cora v. Jahrling (In re Jahrling)*, 816 F.3d 921, 924 (7th Cir. 2016).

### A. Facts Established at Adversary Trial

Taucher, a felon who had been involved in a business dispute with Steven, testified for

Karen. She had been Taucher's girlfriend. According to him Steven approached him at The Real

Times Sports Bar in Elk Grove Village in 2014. Taucher recognized him as they had attended

the same high school when they were younger, but admitted meeting Steven that evening. Trial

Transcript p. 11 ("Transcript"). He said that Steven starting speaking negatively about his own

wife and volunteered that he had a mistress whose photo he showed Taucher. The photo was

said to have been on Steven's cell phone. Taucher told Karen what Steven is alleged to have

said. Steven was also alleged to have said that his wife was unproductive because she was not

employed. Transcript, pp. 13, 15.

Carolyn Rose was also at the Real Times Sports Bar on the evening in question. She

testified to most of what Taucher said.

Steven testified, denying that he told them that he had a mistress and that he showed them

her photo that evening. The court believes Steven. Taucher's bias was strong. He and Steven

had a prior business dispute and the Debtor had been his girlfriend.  The incentive to fabricate

was clear.  He wants to help Karen avoid the state court judgment and get back at Steven for their

business dispute which was not spelled out at trial.  Carolyn Rose's bias is also evident; she

wants to protect her sister-in-law.

The Debtor did not testify or appear at the trial of this adversary proceeding.  Steven or

the court could have asked her whether she believed what Taucher and Carolyn Rose told her?

Was she angry at Steven because of his business dispute with Taucher who was her boyfriend at

the time in issue?

## B. Section 523(a)(6)

Section 523(a)(6) excepts from discharge debts for "willful and malicious injury by the

debtor to another entity or to the property of another entity."  The objecting creditor has to prove

three elements: (1) the debtor owes a debt resulting from an injury he or she caused to another

entity; (2) the debtor's actions in causing the injury were willful; and (3) the debtor's actions

causing the injury were malicious.

### 1. Burden of Proof

An objecting creditor has to establish a discharge exception by a preponderance of the

evidence.  *Grogan v. Garner*, 498 U.S. 279, 287-88, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

### 2. Injury Caused by Debtor to Another

Karen does not dispute that she posted the statements in issue.  Steven has shown that the

statements injured his reputation.  Had she testified she might have said that she thought that

what Taucher told her was true.  All the court has of record is Steven's strong, credible denials

that he told them he had a mistress and that he had showed Taucher and Carolyn Rose the

-6-

mistress' photo.

Karen's interrogatory answers named Taucher and her brother David Rose as witnesses that have information that Steven cheated on his wife. However, no witnesses testified that Steven cheated on his wife. Karen's witnesses testified that Steven said he had done so. Karen's interrogatory answer states that she had not witnessed Steven cheat on his wife.

### 3. Willfulness of Debtor's Actions

It is not enough for a debtor to commit an intentional act that resulted in an injury. The debtor must have intended to cause the injury. *Merritt v. Rizzo (In re Rizzo)*, 337 B.R. 180, 188 (Bankr. N.D. Ill. 2006). Karen acted willfully to hurt her boyfriend's business rival. She intended to cause the injury to Steven's reputation. Her attorney argued that truth is a defense. The truth of Karen's comments has not been demonstrated. She was told something by a couple of persons drinking in a bar; she repeated those comments without cause or excuse. The best proof of whether Karen acted willfully would have been a convincing explanation of why she said what she did. However, recall her interrogatory answer that she had no witnesses who would say that Steven had been involved in an affair. Her failure to testify in her own defense reflects negatively on her position that the statements were true.

### 4. Actions Causing Injury Were Malicious

An act is malicious if done in conscious disregard of one's duties or without just cause or excuse. Karen's failure to testify does not serve her well regarding this element of dischargeability. There is nothing of record showing that she had just cause or an excuse for the statements made about Steven. Did she believe what Taucher told her? Should she have taken what Taucher said with a grain of salt, knowing that he and Steven were involved in a business

dispute?  Should she have known that statements made by Taucher while he was drinking were unreliable?

Steven's denials and statements of how he was injured are unrebutted.  They make sense and are credible.  He values family, supports his family and looks out for his children.  Having a mistress and saying that his wife was unattractive and unproductive because she was unemployed were contrary to his character and highly embarrassing.

### C. Collateral Estoppel

In many adversary proceedings where a state court has entered judgment on the tort in issue res judicata or collateral estoppel could apply.  The judgment order entered by the state court does not delineate the issues or explain the court's ruling that Karen owed Steven $250,000.  Subsequently Steven's attorney asked the judge to file an opinion.  The judge sent him an explanation of his findings in what appears to be a letter on his judicial stationery.  This court was told that the document has not been entered on the record in the state court case.  For that reason, this court could not take judicial notice of it.

Whether collateral estoppel principles of issue preclusion are governed by state or federal law depends on whether the judgment claimed as preclusive is state or federal.  Federal courts are obligated to give state judicial proceedings the full faith and credit those proceedings would have in the courts of that state.  28 U.S.C. § 1738.  The preclusive effect of a state court judgment in a federal case is a matter of state law.  *Brokaw v. Weaver*, 305 F.3d 660, 669 (7th Cir. 2002) ("Under Illinois law collateral estoppel requires that (1) the issues decided in the prior adjudication are identical to issues presented for adjudication in the current proceeding; (2) there be a final judgment on the merits; and (3) the party against whom estoppel is asserted was a party

-8-

or in privity with a party in the prior action."). The state court judgment was entered as a default

for Karen's failure to cooperate with discover obligations. That matter was not decided on its

merits. For that reason collateral estoppel does not preclude trial of the issues herein.

In addition, default judgments can not supply the basis for a claim that a debt is not

dischargeable. *In re Nikitas*, 326 B.R. 127, 130-31 (Bankr. N.D. Ill. 2005).

Default judgments are not always disfavored in dischargeability actions. In *In re

Docteroff* the Third Circuit ruled that a default could supply the basis for a dischargeability

claim. It stated: "We do not hesitate in holding that a party . . . who deliberately prevents

resolution of a lawsuit, should be deemed to have actually litigated an issue for purposes of

collateral estoppel application . . . To hold otherwise would encourage behavior similar to [his]

and give litigants who abuse the processes and dignity of the court an undeserved second bite at

the apple." *In re Docteroff*, 133 F.3d 210, 213-14 (3d Cir. 1997). *See  Herbstein v. Bruetman*,

32 F. App'x 158 (7th Cir. 2002) (Affirming the district court that relied on *Docteroff* in finding

that a dischargeability action could be based on a default judgment entered against a debtor who

refused to comply with his discovery obligations).

In any event, the judgment order does not include an explanation of the judge's finding

that the Debtor committed defamation. *Motion for Summary Judgment*, Docket 10, Exhibit E.

Steven has satisfied the three Section 523(a)(6) dischargeability elements.

### D. Defense of Truth Fails

Under Illinois law "[t]ruth is a defense to a defamation action." *Emery v. Kimball Hill,

Inc.*, 112 Ill.App.3d 104, 108 (1983). Karen has the burden of proving her defense. She did not

satisfy that burden. Taucher was an unreliable witness. Carolyn Rose's testimony did not

establish the truth of Karen's statements; she repeated something she heard while drinking in a

bar. She did not know whether Steven had a mistress.

Karen has alleged that the statements she made were true. However, she has not shown

that they were true, the only issue in dispute before this court, as noted in the September 4, 2019

Trial Order. Docket 25.

### IV. Conclusion

Plaintiff Steven Pavletich has shown by a preponderance of the evidence that the debt

Karen S. Rose owes him is not dischargeable. The Debtor has failed to prove that the statements

she posted were true.

Judgment will be entered in a separate order in favor of the Plaintiff, Steven Pavletich,

and against the Defendant, Karen S. Rose. The $250,000.00 debt that Karen S. Rose owes

Steven Pavletich is not dischargeable.

Date: December 19, 2019                    ENTERED: *Jacqueline P. Cox*

                                           *J. Cox*
                                           _____
                                           **Jacqueline P. Cox**
                                           **United States Bankruptcy Judge**